# McGrann *versus* The North Lebanon Railroad Company.

A contract under seal may be so changed by the parties as to reduce the whole to parol: but every modification of a written agreement will not have this effect; and it will require clear and explicit proof to so change the character of the contract.

A written contract for the grading and masonry of a railroad between designated termini, is not so altered and modified by a change in the route between such termini, as to enable the contractor to recover for the work done, upon a *quantum meruit,* irrespective of the prices designated in the agreement.

Where the monthly estimates of the work done were made out according to the prices designated in the contract, and received and receipted for as under the contract, thus treating the contract as subsisting, the parties thereby waived the consequences of previous changes, and the contractors could not afterwards avail themselves of such changes to recover upon a *quantum meruit* for work done in pursuance of the written agreement.

Where there have been considerable changes and modifications without any intention to abandon or rescind the written agreement, *assumpsit* may be sustained for the work performed, making the sealed agreement the basis of compensation.

Error to the Common Pleas of *Lancaster county.*

This was an action of *assumpsit* brought by Richard McGrann, Sr., and others, against The North Lebanon Railroad Company. On the 10th October, 1853, Richard McGrann, Sr., Michael Malone, Michael Barry, and Richard McGrann, Jr., entered into a contract under seal with the railroad company, by which they covenanted to construct and finish, in the most substantial and workmanlike manner, to the satisfaction and acceptance of the engineer of the company, all the graduation, masonry, and such other work as might be required on the road, being seven miles in length. The work to be finished according to specifications annexed, and the directions of the engineer, on or before the first day of August, 1854. The prices for the different kinds of work were specified and stipulated in the agreement. The agreement also contained the following clauses :—

" The line of road or the gradients may be changed if the

[McGrann *v.* The North Lebanon Railroad Company.]

engineer shall consider such change necessary or expedient, and for any considerable alterations, the injury or advantage to the contractors will be estimated, and such allowance or deduction made in the price as the engineer may deem just and equitable; but no claim for an increase in prices of excavation or embankment on the part of the contractor will be allowed or considered unless made in writing, before the work on that part of the section, where the alteration has been made, shall have been commenced. The engineer may also, on the conditions last recited, increase or diminish the length of any section for the purpose of more nearly equalizing or balancing the excavations and embankments."

After the execution of the foregoing agreement, and after the contractors had commenced work under it, the North Lebanon Railroad Company determined to change the greater part of the route of their road by adopting one abandoned by the Lebanon Valley Railroad Company. The termini of the road, however, remained the same as at first contemplated. Upon this new route the contractors commenced work, and their monthly estimates were made out according to the contract prices, and payments made upon these estimates as the work progressed. After one or two estimates Malone and Barry retired, and Cassidy and Reilly took their places, the work as before being carried on in the name of Richard McGrann & Co. The third estimate was made of the work done to the 1st February, 1854, at the rates fixed by the agreement for the several kinds of work. On this estimate $7112.82 was paid to the contractors, and they receipted for it on the foot of the estimate in full of the above estimate and according to contract. Some of the contractors, during the progress of the work, complained to the engineer of the change of the route, and that the prices fixed by the contract were inadequate.

By the final estimate the entire work amounted to    $85,064.51
Of which there had been paid in cash
   and receipted for on the estimates as
   above stated, .    .    .    .    . $62,932.85
And in stock of the company,    .    .    10,000.00
                                       72,932.85

Leaving due, .    .    .    .                      12,131.66
This balance, the railroad company con-
   tends, is the whole amount due the
   contractors, and is to be paid as fol-
   lows, viz.: in stock,    .    .    . $11,266.00
In cash, .    .    .    .    .    .    865.66
                                      $12,131.66

After this final estimate was made out, the plaintiffs refused to accept the sum found due by it, and release the company, alleging that the change of route had annulled or rescinded the contract, and that they were entitled to recover what the work was reasonably worth irrespective of the contract, and claimed to be paid at the rate of one dollar per cubic yard for all the rock excavation. The company refusing to pay at this rate, this action of *assumpsit* was brought on the 16th April, 1855. The declaration contained the common money counts.

The defendants pleaded *non assumpsit* and payment with leave, and resisted a recovery on the ground that the action should have been covenant, and that any recovery must be of the amount found due by the estimates according to the contract.

On the trial in the court below, the parties presented the following points:—

Plaintiffs' points.—" That if the change of this road amounted to a new road; or was essentially different from the road contracted for, then the plaintiffs are entitled to recover what the work is reasonably worth."

Defendant's points.—" 1st. There can be no implied contract to pay for the performance of labour in reference to which there is an express covenant between the parties; and as it is shown in this case that there was an ageement, under seal, between the defendant and two of the plaintiffs in conjunction with two other parties for the construction of the road, this action cannot be sustained, and the verdict must be for defendant.

" 2d. The change of route will not avoid the contract, because it had a provision within itself for such change, and because the plaintiffs were bound to give notice to the defendant that they would not continue to do the work at the stipulated prices; and there being no evidence of such notice, and the plaintiffs having accepted payment in cash and in stock according to the contract and at the rates fixed by it, as per estimates numbered from 1 to 10 inclusive, the plaintiffs cannot repudiate the sealed agreement and recover upon an implied contract.

" 3d. That as by the terms of the contract it was agreed that the decision of the chief engineer should be final and conclusive in any dispute which may arise, and the parties waive all remedy at law touching the same, and as the contract stipulates that on the completion of the work there shall be a final estimate made of the character, quantity, and value of the work, both parties are bound by the final estimate, and there can be no recovery beyond the amount of it, less the amount paid and agreed to be paid in stock.

" 4th. Upon the whole evidence in the case, the plaintiffs are not entitled to recover, and the verdict must be for the defendant.

" 5th. If the plaintiffs can recover at all in this action, they

must be limited to the prices, terms, and modes of payment fixed in the sealed agreement."

The court below (LONG, P. J.) charged the jury, and answered the points, as follows:—

"Where an injury has been sustained or a right exists in favour of any one, the law affords a remedy, or redress, but that redress must be sought, according to the method or remedy afforded by the law; and the law is (which is not disputed) that in all claims based upon a sealed instrument, the action for the recovery of such claim must be an action of covenant; and in accordance with this principle of law, we are requested to instruct you that there can be no implied contract to pay for the performance of labour in reference to which there is an express covenant between the parties. This is an axiom of law well established. We are further requested to instruct you that as there was an agreement in this case under seal, between the defendant and two of the plaintiffs, in conjunction with two other parties, for the construction of the road, this action cannot be sustained, and that the verdict must be for the defendant. If there was an absence of any circumstances or agreement which would interfere with or materially alter the sealed agreement, the defendant would be entitled to the instruction which he requests the court to give; but under the evidence and circumstances before the court, I cannot give you this instruction. It is true that there was a written contract under seal, by two of the plaintiffs in conjunction with two others, with the defendant for the construction of the North Lebanon Railroad Company, but it is shown by the testimony that the contracted route was changed after the contract was entered into, and Mr. Worrall, the engineer, tells you that the contracted route was different from the one made, the route was entirely changed with the present or constructed road. It was as different as it could well be, having the same termini. The whole was changed with a small exception. The diagram exhibiting the different routes, has been shown to you, and you will perceive the change of the route, as laid down. If, therefore, the change of this road amounted to a new road, and was essentially and materially different from the road contracted for, this action can be maintained, and the plaintiffs can recover what they are entitled to for the work done by them. Where the stipulations of a sealed instrument have been changed or modified, it is often difficult to discover whether such modification so essentially or materially alters the character of the writing as would justify a court, if such modification was made by parol, to turn the whole contract into a parol contract, upon which to base an action of *assumpsit*. It has been held that a mere additional parol agreement, not changing or modifying the one under seal, will not have the effect of turning the whole in parol (Ellmaker *v*. The Franklin Fire Insurance Company, 6 *W.*

*& S.* 439), nor will a stipulation by parol releasing or waiving the performance of part of the covenant: McComb *v.* McKennan, 2 *W. & S.* 217; Lawall *v.* Rader, 12 *Harris* 283. The change made in the contract before us is not embraced by any of these exceptions. 'The test of collision established by the Supreme Court appears to be this, was the capacity of the two contracts to be executed together; where that can be done the one is not substituted for the other, and where there is in fact substitution it operates as an abandonment, the specialty being relinquished, except as matter of reference for the terms of the parol contract which has supplanted it.' Now let us apply this test to the case in hand. Here, there was a sealed contract, but it could not be executed without complete performance of the constructed route, while it would appear from the evidence furnished by the delineation on the map, as well as the other testimony given, so to affect the original as to destroy its character as a specialty, and we therefore instruct you that this action can be maintained. With regard to the second and third points of the defendant, although the written contract contains stipulations or provisions which would warrant the deductions which the counsel for the defendant have arrived at, and as embodied in those points, yet after the change which was made in the constructed route, differing so materially from the route that was contracted for, it amounts in my opinion to a rescission of that contract, unless the plaintiffs by their acts and conduct adopted those provisions, or any part of them; and my confidence in this view is more strongly confirmed, in consideration of the testimony of Mr. Worrall, who was the chief engineer, and who was the person designated in the written contract to perform certain acts, to which the points refer. He says, 'there is a provision in the contract that if there is a difference, the engineer shall fix the prices. This alteration was not deemed necessary by me, nor made by my direction, as I considered the alteration beyond my power as not coming within the purview of that provision, and therefore could make no allowance.' In view, therefore, of all these circumstances, I answer these two points in the negative.

"As to the 4th point, my answer is, that the jury are to determine from the evidence who is entitled to recover and the amount. Matters of fact are for their determination, from the view which I have taken of the law which is to govern this case. I refer the evidence given in the case to your decision.

"We are also requested by the defendant's fifth point, to instruct you, 'If. the plaintiffs can recover at all in this action, they must be limited to the prices, terms, and modes of payment fixed in the sealed agreement.' This will depend upon the evidence which has been given; you will bear in mind that according to the contract executed by the parties, the plaintiffs were to receive, according

[McGrann *v.* The North Lebanon Railroad Company.]

to an express agreement, a certain amount for their work. The prices were fixed, and certain other acts were to be done; and if that part of the contract was not changed but acquiesced in, and agreed upon by the parties, whether it was remunerative or not, the plaintiffs and defendant are bound by such contract, so far as respects the prices agreed upon. It is true that there was a change of the contract so as to turn it from a sealed instrument into a parol agreement, yet if the evidence shows to your satisfaction that part of the stipulations or provisions contained in such contract, it was the understanding and agreement that such provisions should remain in force, then the parties would have to be governed by such stipulations. If you believe that both parties assented according to the testimony that the work should go forward at the prices mentioned in the written contract, if they were willing to submit to the written terms of that agreement as regards the price for the work, it would be a fraud upon the company to allow the plaintiffs to repudiate such agreement. Now you perceive that one very important question for your determination is, did the parties agree to stand to their written agreement as respects the prices for the work? For if that stipulation was adopted by the parties, they must be governed by it, and your verdict ought to be accordingly. If there was an agreement as to the price, such agreement must prevail. To lead you to such a conclusion, it is not necessary that a positive or express agreement should be shown to you; if such an inference can be implied from the testimony, your duty will be to render a verdict accordingly. Now to test whether the testimony goes to show such an agreement, you will take into consideration the conduct of the parties; if they acquiesced, and went on with the contract as regards the prices for the work, if no complaint was made to the managers or directors, it would be a circumstance for your consideration, when you come to deliberate upon your verdict, and to determine whether the parties considered the written contract in force as regards the prices. A mere casual complaint could not change the contract; if you believe that it was upon these terms that the work was commenced, your verdict should be accordingly. There is another circumstance upon which the defendant also relies, as an important fact, of what was the intention of the parties, that is, the receipts given by plaintiffs, and attached to the estimates. These receipts were given from time to time, as those estimates were given, except the final estimate, when the plaintiffs refused to accept, and complained of said estimate. You will recollect that to most all those receipts, if not to the whole, they say that they receipted according to contract. Now what contract do they refer to? It appears by their own showing that there was a contract. Has any contract been shown except the written one? If that was the one to which they had reference, it would be a strong circumstance to show that was the

one by which they were to be governed. It is true the receipt is not final. If it can be shown to you that it was obtained by fraud, mistake, or misrepresentation, it would not be binding, but it would be *prima facie* evidence of what is mentioned, unless you believe from the testimony that such was not the intention of the plaintiffs.

" There has been an offer made to show that there was a tender made by the defendants. I think it proper to state here, that such offer was not made out by the evidence, and you are therefore to pay no regard to the evidence offered to prove that fact.

" You will thus perceive that two important questions for your consideration arise in this case : first, did the parties agree to be ·governed by the written contract ? If the testimony satisfies you that such was their agreement, then your verdict must or ought to be governed by the prices stipulated for. But if you are of opinion that no such agreement was adopted by the parties, but that according to the testimony plaintiffs were to be paid according to what the work was worth, then you will decide accordingly.

" If the old contract was ·not acted under or regulated the prices, the plaintiffs would be entitled to recover what their work is worth."

The jury found for the plaintiffs, and assessed the damages at $22,000. A motion for a new trial was overruled and judgment entered on the verdict.

The defendants thereupon took this writ, and assigned the answer of the court below to the defendant's points, and the general charge for error.

*Franklin* and *Reynolds,* for plaintiffs in error.—The contract under seal was not affected by the change of the location of the road. The boundaries of the action of covenant have been extended in Pennsylvania beyond the limits prescribed to it in England : Jordan *v.* Cooper, 3 *S. & R.* 564 ; McCombs *v.* McKennan, 2 *W. & S.* 216 ; Green *v.* Roberts, 5 *Wharton* 84 ; Ellmaker *v.* Fire Insurance Company, 6 *W. & S.* 453 ; Partridge *v.* Clark, 4 *Barr* 167. That where work is done upon a special contract, and for stipulated prices, and there is a deviation from the original plan by consent of the parties, the price is not excluded, but is to be the rule of payment as far as the special contract applies ; and for the excess only the party is entitled to his *quantum meruit :* Robson *v.* Godfrey, 1 *Holt* 236 (3 *E. C. L. Rep.* 85) ; Chitty on Contracts, 4 *Am. Ed.* 449–452 ; Lawrence *v.* Dale, 3 *Johns. Ch.* 23 ; Shaw *v.* Turnpike, 3 *Penn. Rep.* 445 ; Lawall *v.* Rader, 12 *Harris* 283 ; Merrill *v.* Ithaca Railroad Company, 16 *Wend.* 586 ; Norris *v.* Windsor, 3 *Fairfield* 293 ; Dubois *v.* Delaware and Hudson Canal Company, 4 *Wend.* 285 ; Hayward *v.* Leonard, 7 *Pick.* 181 ; Newman *v.* McGregor, 5 *Hammond* 351 ; Saratoga Railroad Company *v.* Row, 24 *Wend.* 74.

[McGrann v. The North Lebanon Railroad Company.]

*Fordney, Stevens,* and *Keenan,* for defendants in error.—The change of route was sufficient to make the contract a parol one, and sustain the action of *assumpsit:* Vickery v. Moore, 2 *Watts* 456; Lawall v. Rader, 12 *Harris* 283.

The opinion of the court was delivered by

Armstrong, J.—The North Lebanon Railroad Company on the 10th of October, 1853, entered into a written contract under seal with Richard McGrann, Sr., Michael Malone, Michael Barry, and Richard McGrann, Jr., for the construction of seven sections of their road under stipulated prices. The contractors commenced work under their contract, and shortly after the North Lebanon Railroad Company adopted the greater part of a route which had been located and abandoned by the Lebanon Valley Railroad Company, and gave up the greater part of their original route, preserving, however, the original location at the termini of the road enbraced by the contract. Upon this new route the contractors commenced work, and after a small portion was done by the firm, Malone and Barry withdrew, and Phares Cassidy and Andrew Riley took their place; but without any change in the name of the firm, which was "McGrann & Co." The parties, plaintiffs below, proceeded with the work to completion, and then, disregarding the original agreement, bring this action on the case to recover upon a *quantum meruit.* To this the company object, contending that the action should be covenant on the sealed instrument—that the prices therein stipulated should govern, and that upon any dispute arising on the agreement, the decision of the chief engineer should be final. And to the opinion and instructions of the court below, adverse to these views, the several errors assigned apply.

The action proceeds on the ground that the location of the road was changed, and the agreement under seal thereby abandoned, and that the plaintiff may rely on an implied agreement that he may recover so much as his work is reasonably worth. It is not doubted that a contract under seal may be so changed by the parties as to reduce the whole to parol. But it is not every modification that can have this effect. And when parties have evinced their desire for certainty by reducing their agreement to writing, it should require clear and explicit proof to change its character. I have looked in vain to find in the evidence any *express* agreement to abandon or modify the contract. Where, then, is the evidence from which an abandonment of its terms is to be implied? It is true, two of the parties, contractors, withdrew, and two others took their place; but with this the company seemed to have no concern, for no new responsibility was created, nor did any change take place in the manner of doing business, as everything continued to be done in the name of "McGrann & Co." It is also true that the location of the road was altered, yet the termini of

[McGrann *v.* The North Lebanon Railroad Company.]

the two routes were the same, so that the change was intermediate. Now the contract provides expressly that " the line of the road or the gradients may be changed if the engineer shall consider such change necessary or expedient; and for any considerable alterations, the injury or advantage to the contractors will be estimated, and such allowance or deduction made in the price as the engineer may deem just and equitable." Here is a provision fully meeting the change—calculated to do ample justice to the contracting parties, and precluding any inference that an alteration was not within the contemplation of the parties—a provision that no skilful or prudent engineer would omit; and such as every competent contractor would expect and understand.

It is said by Mr. Worrall that the whole road was changed with the exception of going to the coal mines, but he admits that both had the same termini. The agreement provides that "*the line of road or the gradients may be changed* if the engineer shall consider such change necessary or expedient." To what can this provision apply, if not between the extreme ends ? And between these, the extent of the change is not limited; on the contrary, the engineer had the right to "increase or diminish the length of any section— and to make such allowance or deduction in the price as he 'might deem just and equitable." Nothing is more clear than that the parties looked forward to the possible contingency of some change of route, which, so far as changed, is therefore as much within the provision of the written agreement as that first located. But the engineer says, "this alteration was not deemed necessary, nor made by my direction, as I considered the alteration beyond my power, as not coming within the purview of the provision." The opinion of the engineer as to his power to make the alteration, and as to what came within the purview of the provision, may have satisfied his own mind, and controlled his action, but it is not to be regarded as the law of the case. The opinion of the engineer was but advisory, and the discretionary power to change was in the directors. The clause was intended to confer upon them the right to alter the route; and the fact that it was done, is conclusive upon both parties as to its expediency—and both acting upon the contract after this change, are estopped from questioning it. When the change was made in the line of the road, if the contractors wished to abandon the contract, it was their duty to give notice to the company to this effect, but they did not—they proceeded with the work without asking a new contract. Occasionally they complained "that they could not do the work for these prices;" and one member of the firm "did not wish to go on," &c. Complaints on the part of contractors that they are losing, seldom create surprise, for it is not often they boast to an engineer that they are making money. One thing is certain, no new contract was made, and the evidence is much more conclusive that the work proceeded under the *written,* than under an implied contract. The

agreement stipulated not only the prices to be paid for the different kinds of work, but that "no claim should be allowed for extra work, unless the same was done in pursuance of a written order from the engineer in charge, and the claim made at the first settlement after the work was executed; unless the chief engineer, at his discretion, should direct the claim, or such part of it as he might deem just and equitable, to be allowed." No such written order was ever made. The engineer says, "when I affixed these prices I never heard the contractors object to them." The monthly estimates were paid and receipted for by R. McGrann & Co. "according to contract." The retained per centage, to secure the completion of the work, was deducted from each estimate, says the engineer, "because it was mentioned in the contract." He says further, "none of the contractors then insisted on having more than 68 cents (the contract price)—they never gave me notice as engineer that they would not go on at 68 cents. At the time the change was made in the location, the contractors did not say they would throw up the contract."

In Shaw v. The Turnpike, 3 *Penna. Rep.* 445, it was held that "a party treating a contract as subsisting, waives the consequences of a previous default, and cannot afterwards avail himself thereof to recover a *quantum meruit* for work done in pursuance of a contract under seal." And it may be said in the present, as in that case, that if the company put it in the power of the contractors by reason of any default to dispense with the contract, it was their business either to take advantage of the same by declaring it at an end, or to waive the consequences by treating it as still subsisting. In Lawrence v. Dale, 3 *John. Chan.* 23, it was held that, "where one party intends to abandon or rescind a contract on the ground of a violation of it by the other, he must do so promptly and decidedly on the first information of such breach. If he negotiates with the party, after the knowledge of the breach, and permits him to proceed in the work, it is a waiver of his right to rescind the contract." And this principle is fully carried out and maintained by Justice COWEN in Merrill v. Ithaca Railroad Company, 16 *Wend.* 588; in McCombs v. McKennan, 2 *W. & S.* 216, and other cases. The contract is therefore not to be considered as rescinded or abandoned. As, however, the greater part of the line of the road was changed, and the work went on with the assent of both parties, and as there may have been some difference, either increasing or diminishing the difficulties of construction, it may be for the interest of the parties, without doing injustice to either, to allow a recovery in the present form of action, making the sealed agreement the basis of compensation. It will be merely a change of remedy. And this view receives support from the cases just cited. In Merrill v. Ithaca Railroad Company, there was a contract under seal for the construction of certain sections of road, which were not completed at the time agreed upon; but

both parties assented to the work going forward after the day, without any change in the written contract, or a word by the plaintiffs that they intended to alter their rates. *Assumpsit* was brought by the contractor; and although the court said "it would be a fraud on the company, were they permitted to change their ground," yet the action was allowed. It was said, "it would be gross injustice to allow any substantial departure from the stipulations, in reference to which the parties all along acted. It was the business of either to speak out if a change of terms was in contemplation. Silence was equivalent to saying, 'I go on upon the old terms.'"

In the case before us, the evidence was insufficient to authorize the substitution of new prices. To encourage a departure from the terms of written contracts upon slight evidence, is to throw into the jury-box the power to make new ones never agreed on by the parties; and under such circumstances companies incorporated for the purpose of constructing public works, to say the least, are seldom favoured.

The fifth error assigned is sustained. The court erred in not answering the point therein referred to affirmatively. They should have instructed the jury in the language of the point, that, "if the plaintiffs could recover at all in this action, they must be limited to the prices, terms, and modes of payment fixed in the sealed agreement.

The third, sixth, seventh, and eighth errors assigned are substantially the same with the fifth, the answer to which, as now given, meets them also. The first and fourth assignments require no further remarks.

The judgment must be reversed; and if the plaintiffs on another trial shall show themselves entitled to recover, it must be on the terms, prices, stipulations, and conditions fixed in the written and sealed agreement.

Judgment reversed and *venire de novo* awarded.